# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| DEMETRIS R. JEWELL, | ) | 1:09-cv-0348 SKO |
| | ) | |
| Plaintiff, | ) | **ORDER REGARDING PLAINTIFF'S SOCIAL SECURITY COMPLAINT** |
| v. | ) | (Doc. 2) |
| MICHAEL J. ASTRUE, Commissioner of Social Security, | ) | |
| Defendant. | ) | |

## INTRODUCTION

Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security (the "Commissioner" or "Defendant") denying her applications for disability insurance benefits ("DIB") and Supplemental Security Income ("SSI") pursuant to Titles II and XVI of the Social Security Act (the "Act"). 42 U.S.C. §§ 405(g), 1383(c)(3). The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to the Honorable Sheila K. Oberto, United States Magistrate Judge.[1]

---

[1] The parties consented to the jurisdiction of the United States Magistrate Judge. (Docs. 8, 9.) On April 7, 2010, the action was reassigned to the Honorable Sheila K. Oberto for all purposes. *See* 28 U.S.C. § 636(c); Fed. R. Civ. P. 73; *see also* L.R. 301, 305.

**FACTS AND PRIOR PROCEEDINGS**

**A.     Prior Proceedings**

Plaintiff protectively filed applications for DIB and SSI on August 3, 2005, alleging disability beginning September 1, 2004, due to depression and anxiety. (AR 132, 179, 477.) Following the Commissioner's denial of her applications initially and on reconsideration, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). (AR 64-73, 80-86, 478-79.)

ALJ James Berry held hearings on November 27, 2007, and March 17, 2008, and issued a decision on April 17, 2008, finding Plaintiff not disabled. (AR 19-30, 35-63.) On November 24, 2008, the Appeals Council denied review. (AR 12-15.) Therefore, the ALJ's decision became the final decision of the Commissioner. 20 C.F.R. §§ 404.981, 416.1481.

**B.     Factual Background**

Plaintiff was born in 1970 and asserts she has a bachelor's degree in elementary education. (AR 45.) From 1996 to 1998, Plaintiff worked for a cable company as a sales representative.[2] (AR 46.) Plaintiff also worked as a property manager until October 2004.[3] (AR 46-47.) Plaintiff left work as a property manager because of "real bad episodes" of depression and anxiety. (AR 47.) Plaintiff asserts that her depression is a lifelong problem and that she stopped working because she "couldn't function at work," "didn't have energy," and "didn't want to live." (AR 47.) Plaintiff did some work in 2005 through a temporary agency for one and a half months. (AR 55.) According to Plaintiff, she left because of medical reasons, but the ALJ noted that the record indicated that she was laid off. (AR 56, 298.)

According to Plaintiff, in 2004 she became forgetful, and she "started hearing voices" and "feeling really, really depressed." (AR 48.) The voices would tell her to kill herself; at one time, the

---

[2] Other evidence indicates that Plaintiff reportedly worked for a cable company between June 1997 and April 1999. (AR 186.)

[3] Plaintiff testified in 2008 that she had worked as a property manager for eleven years. (AR 46.) Other evidence in the record indicates, however, that she reportedly worked as a property manager from either April 2001 or April 2002 to September 2004. (AR 153, 186.)

voices told her to burn down the house with her children in it. (AR 48.) She has attempted to commit suicide three times, the last time in 2006 or 2007. (AR 48.)

In April 2004, Plaintiff was admitted to Loma Linda University Behavioral Medicine Center ("Loma Linda"), where testing revealed a Global Assessment of Functioning ("GAF") of 35 on admission and 45 at the time of discharge. In July 2005, Plaintiff admitted herself to Good Samaritan Hospital Southwest ("Good Samaritan") for suicidal ideation, but she left the hospital the same day. (AR 357.)

In August 2005, Plaintiff applied for DIB and SSI pursuant to Titles II and XVI, asserting that she was disabled due to her mental impairments. In October 2005, Plaintiff submitted a function report, indicating that she had no problems with her personal care, that she prepared her own meals once a week, cleaned her room, drove a car, handled money, and shopped for groceries. (AR 17-72.) In October 2005, Plaintiff's sister also completed a third-party function report which noted that Plaintiff provided care for her two sons, was able to handle her own personal care, prepared meals once a week, shopped for groceries, and managed finances. (AR 162-64.)

In November 2005, Plaintiff underwent a psychiatric examination conducted by Shailesh Patel, M.D., a Board-certified psychiatrist. (AR 272-74.) Dr. Patel found that Plaintiff was able to interact with coworkers and supervisors, deal with the public, understand, remember, and carry out simple instructions. (AR 274.) He also found that she showed fair attention and concentration, a fair ability to work full-time, and the ability to handle funds. (AR 274.)

On March 29, 2006, Barry Rudnick, M.D., a state agency psychiatrist, assessed Plaintiff's functional limitations utilizing a psychiatric review technique form pursuant to 20 C.F.R. §§ 404.1520a(e) and 416.920a(e). (AR 306-19.) Dr. Rudnick opined that Plaintiff's activities of daily living were mildly restricted, that she had moderate difficulties in maintaining social functioning, concentration, persistence, and pace, and that she would experience one or two episodes of decompensation, each of extended duration. (AR 316.)

Dr. Rudnick also assessed Plaintiff's mental residual functional capacity ("RFC") on March 29, 2006. (AR 320-23.) Dr. Rudnick's mental RFC assessment included the following information:

> The claimant has a severe mental impairment that does not meet or equal a listing. She was briefly hospitalized in 2004 in the context of her fear of being assaulted by her husband. When he was in police custody, she felt safe returning to her home. The claimant has some symptoms of social withdrawal. She mainly stays at home. She is able to drive and can do basic [activities of daily living]. Cognitive function is more than mildly limited by depressive and anxiety symptoms. The severity of the mental impairment would be consistent with her being expected to be able to perform routine work related tasks not calling for more than routine interpersonal interaction.

(AR 323.) Another state agency psychiatrist confirmed Dr. Rudnick's mental RFC assessment on December 13, 2006. (AR 320.)

On December 14, 2006, Plaintiff admitted herself to Good Samaritan again, asserting that voices were instructing her to kill herself. (AR 347.) Dr. Raul Mendoza examined Plaintiff and assigned her a GAF of 15. (AR 351.) Upon Plaintiff's discharge on December 23, 2006, her GAF was assessed as 50. (AR 356.)

On January 22, 2007, Plaintiff again admitted herself to Good Samaritan because of increased suicidal ideation. (AR 454-55.) Dr. Mendoza assessed Plaintiff's GAF to be 15. On January 26, 2007, Plaintiff discharged herself over the advice of Dr. Mendoza. (AR 458-59.) Plaintiff returned to Good Samaritan on March 12, 2007, and in August 2007. She was prescribed psychotropic medications during the course of her March 2007 hospitalization. (AR 436-37.) In August 2007, Dr. Mendoza opined that Plaintiff's prognosis was poor because of noncompliance with treatment. (AR 410.)

On March 17, 2008, Plaintiff appeared before the ALJ to provide testimony regarding her disability claim. During the hearing, Plaintiff stated that a normal day consists of sitting around in her room. (AR 51.) Her twenty-year-old son does the grocery shopping. (AR 52.) Plaintiff stated that she occasionally goes to church but does not exercise. (AR 52.) Plaintiff further testified that she sometimes attends her sons' extracurricular activities at school. (AR 56.) Plaintiff testified that she does not have the energy to lift. She estimated that the most she could lift would be ten pounds, but probably could not carry that weight because of dizziness from the medication. (AR 56.) She could sit for two hours and stand for two hours, and estimated that she could walk for two to three minutes. (AR 56-57.) Plaintiff further testified that she receives food stamps but no rent subsidy. (AR 57.)

1  According to Plaintiff, she has trouble with her concentration and memory; if she were to
2  begin a job, she would not be able to complete it. (AR 52.) She experiences paranoia, crying spells,
3  and panic attacks every two hours that leave her "real nervous and shaking." (AR 52-53.) Her
4  insomnia causes her to sleep only three hours a night. (AR 53.) Other than attending her own
5  doctor's appointments, she would leave her home only to accompany her sons on their appointments.
6  (AR 53.) Plaintiff testified that she takes so many different medications because "they're trying so
7  many different things to see what could work for" her. (AR 54.) She further testified that the
8  medications are not helpful, however. (AR 54.)

9  On April 17, 2008, the ALJ issued a decision denying Plaintiff's disability application.
10 Specifically, the ALJ found that Plaintiff (1) had not engaged in substantial gainful activity since the
11 alleged onset of her disability; (2) has an impairment or a combination of impairments that is
12 considered "severe" based on the requirements in the Code of Federal Regulations; (3) does not
13 have an impairment or combination of impairments that meets or equals one of the impairments set
14 forth in 20 C.F.R. Part 404, Subpart P, Appendix 1; (4) could not perform her past relevant work;
15 and (5) could perform jobs that exist in significant numbers in the national economy. (AR 24-30.)

16 On November 24, 2008, the Appeals Council denied Plaintiff's request for a review of the
17 ALJ's decision. A timely appeal to this Court followed.

## SCOPE OF REVIEW

19 The ALJ's decision denying benefits "will be disturbed only if that decision is not supported
20 by substantial evidence or it is based upon legal error." *Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir.
21 1999). In reviewing the Commissioner's decision, the Court may not substitute its judgment for that
22 of the Commissioner. *Macri v. Chater*, 93 F.3d 540, 543 (9th Cir. 1996). Instead, the Court must
23 determine whether the Commissioner applied the proper legal standards and whether substantial
24 evidence exists in the record to support the Commissioner's findings. *See Lewis v. Astrue*, 498 F.3d
25 909, 911 (9th Cir. 2007).

26 "Substantial evidence is more than a mere scintilla but less than a preponderance." *Ryan v.*
27 *Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008). "Substantial evidence" means "such
28 relevant evidence as a reasonable mind might accept as adequate to support a conclusion."

*Richardson v. Perales*, 402 U.S. 389, 401 (1971) (*quoting Consol. Edison Co. of N.Y. v. NLRB*, 305 U.S. 197, 229 (1938)). The Court "must consider the entire record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion, and may not affirm simply by isolating a specific quantum of supporting evidence." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007) (citation and internal quotation marks omitted).

## **APPLICABLE LAW**

An individual is considered disabled for purposes of disability benefits if she is unable to engage in any substantial, gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted, or can be expected to last, for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); *see also Barnhart v. Thomas*, 540 U.S. 20, 23 (2003). The impairment or impairments must result from anatomical, physiological, or psychological abnormalities that are demonstrable by medically accepted clinical and laboratory diagnostic techniques and must be of such severity that the claimant is not only unable to do her previous work, but cannot, considering her age, education, and work experience, engage in any other kind of substantial, gainful work that exists in the national economy. 42 U.S.C. §§ 423(d)(2)-(3), 1382c(a)(3)(B), (D).

The regulations provide that the ALJ must make specific sequential determinations in the process of evaluating a disability. In the First Step, the ALJ must determine whether the claimant is currently engaged in substantial gainful activity. 20 C.F.R. §§ 404.1520(b), 416.920(b). If not, in the Second Step, the ALJ must determine whether the claimant has a severe impairment or a combination of impairments significantly limiting her from performing basic work activities. 20 C.F.R. §§ 404.1520(c), 416.920(c). If so, in the Third Step, the ALJ must determine whether the claimant has a severe impairment or combination of impairments that meet or equal the requirements of the Listing of Impairments ("Listing"), 20 C.F.R. 404, Subpart P, App. 1. 20 C.F.R. §§ 404.1520(d), 416.920(d). If not, in the Fourth Step, the ALJ must determine whether the claimant has sufficient residual functional capacity despite the impairment or various limitations to perform her past work. 20 C.F.R. §§ 404.1520(f), 416.920(f). If not, in Step Five, the burden shifts to the Commissioner to show that the claimant can perform other work that exists in significant numbers

in the national economy. 20 C.F.R. §§ 404.1520(g), 416.920(g). If a claimant is found to be disabled or not disabled at any step in the sequence, there is no need to consider subsequent steps. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).

Applying this process in this case, the ALJ found that Plaintiff (1) had not engaged in substantial gainful activity since the alleged onset of her disability; (2) has an impairment or a combination of impairments that is considered "severe" based on the requirements in the Regulations; (3) does not have an impairment or combination of impairments that meets or equals one of the impairments set forth in 20 C.F.R. Part 404, Subpart P, Appendix 1; (4) could not perform her past relevant work; and (5) could perform jobs that exist in significant numbers in the national economy. (AR 24-30.)

On appeal, Plaintiff contends that the ALJ (1) did not fully develop the record and (2) improperly evaluated her subjective complaints.

## DISCUSSION

### A.   The ALJ's Duty to Develop the Record

Plaintiff maintains that the ALJ erred in failing to recontact the psychiatrists who treated her at Loma Linda and Good Samaritan before relying on the opinions of Dr. Patel and reviewing physicians to address her residual functional limitations. (Pl.'s Opening Br. at 8.) She further asserts that the ALJ failed to use the services of a medical expert to evaluate additional medical evidence she submitted. (Pl.'s Opening Br. at 8-9.) Plaintiff, therefore, contends that the ALJ failed to fully and fairly develop the record in this case. (Pl.'s Opening Br. at 9.)

RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis of 8 hours a day, for five days a week, or an equivalent work schedule. Social Security Ruling ("SSR") 96-8p.[4] The RFC assessment considers only functional limitations and restrictions that result from an individual's

---

[4] SSRs are "final opinions and orders and statements of policy and interpretations" that the Social Security Administration has adopted. 20 C.F.R. § 402.35(b)(1). Once published, these rulings are binding precedent upon ALJs. *Heckler v. Edwards*, 465 U.S. 870, 873 n.3 (1984); *Gatliff v. Comm'r of Soc. Sec. Admin.*, 172 F.3d 690, 692 n.2 (9th Cir. 1999).

7

medically determinable impairment or combination of impairments. *Id.* "In determining a claimant's RFC, an ALJ must consider all relevant evidence in the record including, *inter alia*, medical records, lay evidence, and 'the effects of symptoms, including pain, that are reasonably attributed to a medically determinable impairment.'" *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2006).

Plaintiff's argument is based on her belief that "treatment records that do not contain an opinion from a treating source render them inadequate to allow for a proper disability determination." (Pl.'s Opening Br. at 8.) This "inadequacy," according to Plaintiff, triggers the ALJ's duty to recontact the treating source. As discussed below, this argument lacks merit.

First, the ALJ's duty to recontact a medical source is only triggered where the medical record is insufficient to make a disability finding or the evidence conflicts to the extent that the ALJ cannot reach a conclusion. 20 C.F.R. §§ 404.1512(e), 416.912(e) ("When the evidence we receive from your treating physician or psychologist or other medical source is inadequate for us to determine whether you are disabled, we will need additional information to reach a determination or a decision."); 20 C.F.R. §§ 404.1527(c)(3), 416.927(c)(3); *see also Mayes v. Massanari*, 276 F.3d 453, 459-60 (9th Cir. 2001).

A medical record that does not contain an opinion from a treating source does not, by itself, render it inadequate. Although the Ninth Circuit, most recently in *Orn v. Astrue*, reiterated the requirement of deference to a treating source's opinion, it does not follow that the absence of such an opinion automatically renders a medical record insufficient. *Orn v. Astrue*, 495 F.3d 625, 631-34 (9th Cir. 2007). Plaintiff's citation to *Tonapetyan v. Halter*, 242 F.3d 1144 (9th Cir. 2001), does not aid her. In *Tonapetyan*, the court found that additional information about the claimant's mental impairment was necessary because the consultative examiner's report upon which the ALJ relied was unclear and specifically stated a more detailed report was necessary. *Tonapetyan*, 242 F.3d at 1150.

Here, the ALJ reviewed all of the medical evidence of record, including medical records obtained from physicians who treated Plaintiff at Loma Linda and Good Samaritan between 2004 and 2007. The ALJ determined that Plaintiff was limited to simple, repetitive tasks; could maintain attention, concentration, persistence, and pace; could relate to and interact with others; could adapt

to usual changes in work settings; and could adhere to safety rules. (AR 25.) In so finding, the ALJ adopted the opinion of the consultative examiner, Dr. Patel, who determined that Plaintiff could understand, remember, and carry out simple instructions. (AR 28, 274.) Dr. Patel's report noted his observations of Plaintiff, her past psychiatric history, and her activities of daily living and social functioning. (AR 272.) Dr. Patel further reviewed Plaintiff's chart provided by the Commissioner and Plaintiff's past medical history. (AR 273.) In conducting Plaintiff's mental status examination, Dr. Patel evaluated her thought process and thought content, and tested her memory and cognition, before ultimately reaching a diagnosis and assessing Plaintiff's level of functioning. (AR 273-74.) Dr. Patel's report is clear, consistent, and based upon his independent clinical findings. *See id.* at 1149 (consultative examiner's opinion may constitute substantial evidence when it is based on examiner's independent findings and observations).

Moreover, Plaintiff points to no conflict or insufficiency in the medical record that would require the ALJ to seek clarification from the physicians who had treated Plaintiff in the past. This is particularly true because the medical records from those providers were before the ALJ for consideration – even though none of those physicians provided a formal written opinion as to Plaintiff's functional limitation. Plaintiff is essentially arguing that once the ALJ received records from physicians who had treated her in the past, the ALJ was under a sua sponte duty to solicit formal and current opinions from those physicians – even though the medical evidence of record was clear and consistent, providing sufficient evidence to decide the claim. There simply is no such duty to collect further evidence absent inconsistency, conflict, or a lack of evidence in the medical record such that additional or supplement medical evidence is necessary to make a decision on the claim.

Second, Plaintiff fails to point to any evidence in the record that would contradict the RFC finding. Consistent with the diagnoses in the record, the ALJ determined that Plaintiff's major depressive disorder and anxiety disorder were severe impairments. There was substantial evidence, however, that, despite these impairments, Plaintiff could perform simple, repetitive tasks. In short, Plaintiff's suggestion that a treating source must always provide an opinion as to a claimant's limitations is simply not correct. *See* 20 C.F.R. §§ 404.1512(e), 416.912(e).

Plaintiff next maintains that, because additional medical evidence was submitted after Dr. Patel's examination and Dr. Rudnick's review of records, the ALJ should have used the services of a medical expert. (Pl.'s Opening Br. at 8.) Plaintiff cites SSR 96-6p for the proposition that the ALJ or the Appeals Council must obtain an updated medical expert opinion before making a decision of disability based on medical equivalence. Plaintiff's argument is unavailing.

SSR 96-6p provides that an ALJ and the Appeals Council must obtain an updated medical opinion from a medical expert either (1) when no additional medical evidence is received, but in the opinion of the ALJ or the Appeals Council the symptoms, signs, and laboratory findings reported in the case record suggest that a judgment of equivalence may be reasonable; or (2) when additional medical evidence is received that in the opinion of the ALJ or the Appeals Council may change the state agency medical or psychological consultant's finding that the impairment is not equivalent in severity to any impairment in the Listing of Impairments. Plaintiff has not shown that either condition applies in this case to warrant obtaining an updated medical expert opinion. *See Albidrez v. Astrue*, 504 F. Supp. 2d 814, 820 n.9 (C.D. Cal. 2007). Neither the ALJ nor the Appeals Council found that the "additional medical evidence" would change the state agency consultant's finding that Plaintiff's impairments were not equivalent in severity to any impairment in the Listing of Impairments. Accordingly, the ALJ's RFC finding was supported by substantial evidence and legally correct.

**B.     Plaintiff's Credibility**

Plaintiff next contends that the ALJ failed to set forth legally sufficient reasons for rejecting her subjective complaints. According to the Commissioner, however, the ALJ gave valid reasons for finding Plaintiff not entirely credible.

The ALJ found that Plaintiff's "medically determinable impairments could reasonably be expected to produce the alleged symptoms; however, [Plaintiff's] statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the residual functional capacity assessment." (AR 26.) The ALJ further found that the objective medical evidence in the record did not fully support Plaintiff's subjective complaints. (AR 28.) In this regard, the ALJ noted that Plaintiff left the hospital against medical advice on a number

of occasions. (AR 28.) Plaintiff's claim that her medications were not helpful was contradicted by the treatment record. (AR 28.) The ALJ further found Plaintiff "not truthful" about the alleged number of her medications because the medical record did not reflect such a high number. (AR 28.) Further, Plaintiff alleged she quit working due to medical problems, but the medical record indicated she was "laid off." (AR 28.) She denied abusing drugs or alcohol, but a drug test was positive for benzodiazepines. (AR 27, 28, 449.) The ALJ also found that Plaintiff's daily living activities belied her claim of disability. (AR 28.) When Plaintiff took her medications, the ALJ further found that she was able to function well enough to do simple, repetitive tasks. (AR 28.)

The ALJ also considered the third-party function report by Plaintiff's sister. (AR 28-29.) The ALJ noted that the report referred to Plaintiff's significant activities of daily living, including watching television, resting, and eating; managing personal care; preparing food once a week; driving a car; and shopping in stores. (AR 28, 161-64.) Plaintiff's sister also claimed that Plaintiff's condition affected certain areas such as memory, completing tasks, and getting along with others. (AR 166.) According to the ALJ, however, the statement failed to quantify any such limitations or explain how those areas were affected. Although Plaintiff's sister stated that Plaintiff did not finish tasks when starting them, the ALJ found that this purported limitation was contrary to the medical evidence. (AR 28-29, 166.)

**1.     Legal Standard**

In evaluating the credibility of a claimant's testimony regarding subjective pain, an ALJ must engage in a two-step analysis. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment that could reasonably be expected to produce the pain or other symptoms alleged. *Id.* The claimant is not required to show that her impairment "could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom." *Id.* (*quoting Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007)). If the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if she gives "specific, clear and convincing reasons" for the rejection. *Id.* As the Ninth Circuit has explained:

> The ALJ may consider many factors in weighing a claimant's credibility, including (1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities. If the ALJ's finding is supported by substantial evidence, the court may not engage in second-guessing.

*Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008) (citations and internal quotation marks omitted); *see also Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1226-27 (9th Cir. 2009); 20 C.F.R. §§ 404.1529, 416.929. Other factors the ALJ may consider include a claimant's work record and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which he complains. *Light v. Soc. Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997).

### 2. Analysis

In this case, the ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to produce the alleged symptoms. Therefore, absent affirmative evidence of malingering, the ALJ's reasons for rejecting Plaintiff's testimony must be clear and convincing. As discussed further below, although some of the reasons the ALJ gave were improper, the Court finds that the ALJ nonetheless gave clear and convincing reasons supported by the record to discount Plaintiff's credibility.

Plaintiff contends that the ALJ improperly discounted her credibility on the basis of a drug test that was positive for benzodiazepines. Plaintiff notes that the anti-anxiety medications she is taking would account for the positive drug test. Accordingly, the Court concludes this reason in the ALJ's decision was not a proper basis for rejecting Plaintiff's credibility.

Plaintiff further maintains that the ALJ erred in discounting her complaints because she left the hospital against medical advice. The Ninth Circuit has "particularly criticized the use of a lack of treatment to reject mental complaints both because mental illness is notoriously under reported and because it is a questionable practice to chastise one with a mental impairment for the exercise of poor judgment in seeking rehabilitation." *Regennitter v. Comm'r of Soc. Sec. Admin.*, 166 F.3d 1294, 1299-1300 (9th Cir. 1999) (quotation marks omitted). Therefore, the Court concludes that this reason was also not a proper basis for the ALJ's rejection of Plaintiff's credibility.

The fact that the Court discounts two of the reasons identified by the ALJ for discrediting Plaintiff's testimony does not, however, render the ALJ's credibility determination invalid, as long as that determination is supported by substantial evidence in the record overall. *See Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1197 (9th Cir. 2004) (concluding that, even if record did not support one of ALJ's stated reasons for disbelieving claimant's testimony, error was harmless).

Here, although the ALJ improperly relied upon Plaintiff's positive drug test and leaving the hospital against medical advice, the ALJ's error was harmless because substantial evidence otherwise supports the ALJ's credibility determination. First, the ALJ found that Plaintiff's assertions that her medication did not help alleviate any of her symptoms were directly contrary to the medical evidence of record indicating that she was able to do simple, repetitive tasks when she took her medications. *See Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999) (ALJ's finding that symptoms improved with medication was valid consideration in assessing claimant's credibility).

Second, in discounting Plaintiff's credibility, the ALJ found multiple inconsistencies in the record. Inconsistent statements are matters appropriately considered in evaluating a claimant's subjective complaints. In rejecting testimony regarding subjective symptoms, permissible grounds include a reputation for dishonesty, conflicts or inconsistencies between the claimant's testimony and his conduct or work record, internal contradictions in the testimony, and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which the claimant complains. *Moisa v. Barnhart*, 367 F.3d 882, 885 (9th Cir. 2004); *Thomas v. Barnhart*, 278 F.3d 947, 958-59 (9th Cir. 2002). The ALJ may consider whether the Plaintiff's testimony is believable or not. *Verduzco v. Apfel*, 188 F.3d 1087, 1090 (9th Cir. 1999).

In this case, the ALJ found Plaintiff's statement that she quit work because of medical problems inconsistent with the medical record indicating that she was laid off. *See Bruton v. Massanari*, 268 F.3d 824, 828 (9th Cir. 2001) (holding that ALJ's specific, cogent reasons for disregarding claimant's testimony included, *inter alia*, claimant's statement to his doctor that he left his job because he was laid off, rather than because he was injured). Further, Plaintiff does not dispute the ALJ's finding that she was not truthful regarding the number of psychotropic medications

she claimed to be taking because this number conflicted with the actual number of medications prescribed at any one time throughout 2004 to 2007. (AR 28.)

Third, the ALJ found that the objective medical evidence in the record did not fully support Plaintiff's subjective complaints. Although the inconsistency of objective findings with subjective claims may not be the sole reason for rejecting subjective complaints of pain, *Light*, 119 F.3d at 792, it is one factor which may be considered with others. *Moisa*, 367 F.3d at 885; *Morgan*, 169 F.3d at 600. Here, for example, although Plaintiff testified that she has occasional hallucinations, the record indicates that she denied having hallucinations on several occasions. (AR 28, 273, 286, 298, 378, 425.) Plaintiff further testified that her medications were not helpful (AR 54), yet her treatment record contradicts her testimony and indicates that her medications in December 2006 decreased the voices she heard telling her to kill herself, and in March 2007, improved her psychotic symptoms and suicidal tendencies. (AR 327, 437.) Moreover, Plaintiff's alleged lack of concentration, inability to complete a job, and panic attacks every two hours are inconsistent with Dr. Patel's findings that Plaintiff's attention and concentration were "fair" at the evaluation; Plaintiff has the ability to understand, remember, and carry out simple instructions; and Plaintiff has a "fair ability to handle eight hours of work." (AR 274.)

Fourth, it was appropriate for the ALJ to consider Plaintiff's activities of daily living in determining that she was not entirely credible. The mere fact of a claimant's carrying on certain daily activities does not necessarily detract from credibility as to overall disability. However, a negative inference is permissible where the activities contradict the other testimony of the claimant, or where the activities are of a nature and extent to reflect transferable work skills. Daily activities support an adverse credibility finding if a claimant is able to spend a substantial part of her day engaged in pursuits involving the performance of physical functions or skills that are transferable to a work setting. *Orn*, 495 F.3d at 639; *Morgan*, 169 F.3d at 600; *see also Thomas*, 278 F.3d at 959. A claimant's performance of chores such as preparing meals, cleaning house, doing laundry, shopping, occasional childcare, and interacting with others has been considered sufficient to support an adverse credibility finding when performed for a substantial portion of the day. *See Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1175 (9th Cir. 2008); *Burch v. Barnhart*, 400 F.3d 676, 680-81 (9th Cir.

2005); *Thomas*, 278 F.3d at 959; *Morgan*, 169 F.3d at 600; *Curry v. Sullivan*, 925 F.2d 1127, 1130 (9th Cir. 1990).

In *Stubbs-Danielson*, for example, the court found that the ALJ sufficiently explained his reasons for discrediting the claimant's testimony because the record reflected that the claimant performed normal activities of daily living, including cooking, housecleaning, doing laundry, and helping her husband in managing finances. 539 F.3d at 1175. These activities tended to suggest that the claimant may have still been capable of performing the basic demands of unskilled work on a sustained basis. *Id.*

Here, the ALJ appropriately considered Plaintiff's admitted activities of daily living in 2005, which included housekeeping, self-care, shopping, cooking, and financial management comparable to the activities in the cases cited above. The ALJ found that Plaintiff's statements that, *inter alia*, she shopped two to three times a month, cleaned her room, and could go out alone were inconsistent with her claimed inability to work. Plaintiff's activities of daily living were, therefore, clear and convincing evidence to discount her credibility.[5]

Fifth, the ALJ also expressly considered and rejected the third-party report, giving it little weight because it was contrary to the objective medical evidence contained in the record. (AR 28-29.) This reasoning was specific and germane to the witness. *Dodrill v. Shalala*, 12 F.3d 915, 918-19 (9th Cir. 1993). Specifically, the statement by Plaintiff's sister that Plaintiff could not finish tasks was contrary to Dr. Rudnick's mental RFC assessment that Plaintiff was not significantly limited in her ability to carry out short and simple instructions and only moderately limited in her abilities to carry out detailed instructions and maintain attention and concentration for extended periods of time. (AR 320.) Dr. Patel also opined that Plaintiff could understand, remember, and

---

[5] The Commissioner points out that Plaintiff's activities as reported in her October 2005 function report are inconsistent with her activities about which she testified in March 2008. (Def.'s Opp'n Br. at 12.) Plaintiff argues, however, that her activities as reported in her function report are not inconsistent with her hearing testimony, but rather reveal her deteriorating condition over this period of time. (Pl.'s Reply Br. at 6.) It is not clear whether Plaintiff's condition deteriorated as much as she maintains. For example, although Plaintiff testified in 2008 that she no longer drives and neither cooks nor shops, she also testified that she occasionally attends church, accompanies her children on appointments, and attends their extracurricular events at school. In any event, the ALJ did not base his adverse credibility determination on Plaintiff's purportedly inconsistent reports of daily living activities between 2005 and 2008. Rather, the ALJ found that Plaintiff's "wide range of activities of daily living" as reported in October 2005 were "not fully consistent with her claim of total disability," which, according to Plaintiff, began on September 1, 2004. (AR 28.)

carry out simple instructions. (AR 274.) Thus, the ALJ's reasoning was based on the contradictory medical evidence, which was appropriately considered. *Lewis v. Apfel*, 236 F.3d 503, 511-12 (9th Cir. 2001); *see also Thomas*, 278 F.3d at 958-59.

In sum, the ALJ cited clear and convincing reasons for rejecting Plaintiff's subjective complaints regarding the intensity, duration, and limiting effects of her symptoms. *Cf. Batson*, 359 F.3d at 1196. Moreover, the ALJ's reasons were properly supported by the record and sufficiently specific to allow this Court to conclude that the ALJ rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit Plaintiff's testimony.

## CONCLUSION

After consideration of the Plaintiff's and Defendant's briefs and a thorough review of the record, the Court finds that the ALJ's decision is supported by substantial evidence in the record as a whole and is based on proper legal standards. Accordingly, the Court DENIES Plaintiff's appeal from the administrative decision of the Commissioner of Social Security. The Clerk of this Court is DIRECTED to enter judgment in favor of Defendant Michael J. Astrue, Commissioner of Social Security, and against Plaintiff Demetris R. Jewell.

IT IS SO ORDERED.

**Dated:   August 11, 2010**              **/s/ Sheila K. Oberto**
UNITED STATES MAGISTRATE JUDGE